# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LAVERNE Y. ALEXANDER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | No. 04 C 6840 |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Laverne Y. Alexander's ("Alexander") motion for summary judgment or remand. This matter is also before the court on Defendant's motion for summary judgment. For the reasons stated below, we deny Alexander's motion for summary judgment, grant Alexander's motion to remand, and deny Defendant's motion for summary judgment.

## BACKGROUND

On June 30, 2002, Alexander filed for Social Security disability insurance benefits. Alexander contended that she was unable to work because of pain in her

1

knees, right hand, neck, shoulder, and toes. Alexander's request for benefits was denied and on August 21, 2003, she was afforded an administrative hearing before an administrative law judge ("ALJ"). Alexander was not represented by counsel at the hearing. After the hearing, the ALJ denied Alexander's request for benefits and subsequently the Appeals Council denied Alexander's request for review of the ALJ's decision. Alexander is now before this court appealing the ALJ's decision.

## LEGAL STANDARD

A reviewing court will uphold an ALJ's decision if it is supported by "substantial evidence" in the record and the ALJ applied the correct legal standards. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). The Seventh Circuit defines "[s]ubstantial evidence" as what a "reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). When determining whether substantial evidence exists, the court must review the record as a whole, but is not allowed to substitute its judgment for the ALJ's by "reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Williams v. Apfel*, 179 F.3d 1066, 1071-72 (7th Cir. 1999). Deference should be given to an ALJ's determinations relating to credibility, and should be reversed only if the determinations are "patently wrong."

*Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000)(quoting *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990)). By contrast, the ALJ's legal conclusions are reviewed de novo. *Nelson v. Bowen*, 855 F.2d 503, 506 (7th Cir. 1988); *Aidinovski v. Apfel*, 27 F.Supp.2d 1097, 1101 (N.D. Ill. 1998). An ALJ must provide some explanation that would allow the parties to understand the reasoning for the decision. *See Clifford*, 227 F.3d at 872 (stating that "[w]hile the ALJ is not required to address every piece of evidence, he must articulate some legitimate reason for his decision. . . [and] he must build an accurate and logical bridge from the evidence to his conclusion").

## DISCUSSION

The Commissioner of the Social Security Administration employs a five-step analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f); *Rice v. Barnhart*, 384 F.3d 363, 365 (7th Cir. 2004). In the first two steps the ALJ determines "whether a claimant is not presently working, and second, whether the complained of impairment(s) are of the required duration and significantly limit the claimant's ability to work." *Id.*; 20 C.F.R. §§ 404.1520(a)-(c), 416.920(a)-(c). In step three, the ALJ compares evidence of impairments with "a list of impairments presumed severe enough to preclude any gainful work." *Rice*, 384

F.3d at 365; 20 C.F.R. pt. 404, subpt. P, App. 1. If the claimant's impairment "meets or equals one of the listed impairments, the claimant qualifies for benefits and no further inquiry is necessary." *Rice*, 384 F.3d at 365; 20 C.F.R. §§ 404.1520(d), 416.920(d). However, if the claimant's impairment is not sufficient under step three, the court proceeds on to steps four and five. *Rice*, 384 F.3d at 365. In the fourth and fifth steps of the analysis, the ALJ determines whether the "claimant's residual functional capacity," which is defined as the tasks "a claimant can still do, despite his or her limitations," *Id.* at n.1; 20 C.F.R. § 404.1545(a), "will allow the claimant to pursue her past work." *Rice*, 384 F.3d at 365; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant's impairment "precludes the performance of past work, the claimant's [residual functional capacity], age, education, and work experience are considered to determine if other work exists that would accommodate the claimant." *Rice*, 384 F.3d at 365; 20 C.F.R. §§ 404.1520(f), 416.920(f).

I. Right to Counsel

Alexander argues that the ALJ did not adequately inform her of her right to counsel at the administrative hearing. A party appearing before an ALJ regarding a request for Social Security benefits has a statutory right to counsel at the administrative hearing. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994). The

4

right to counsel can be waived by the party appearing before the ALJ. *Id.* A waiver is only proper if the ALJ has first explained to the party : "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Id.*

Alexander argues that the ALJ did not properly notify him of his rights, and that Alexander did not properly waive his right to counsel at the hearing. At the hearing, the ALJ informed Alexander of how counsel could assist Alexander in presenting the evidence in an organized manner and making legal arguments. (AR 185). The ALJ also explained that an attorney could assist Alexander by asking appropriate questions of witnesses at the hearing. (AR 185). The ALJ informed Alexander of the possibility that she could obtain an attorney through a contingency-fee arrangement and discussed the limitation on attorneys' fees. (AR 187). The ALJ also told Alexander that if she wanted to obtain counsel, the ALJ would grant a continuance of the case. (AR 187-88). Alexander argues that the ALJ "failed to adequately inform Plaintiff of the advantages of having an attorney. . . ." (P SJ 3). We disagree. As is indicated above, the ALJ clearly discussed the benefits of having counsel present at the hearing. Alexander has failed to show that the ALJ's admonitions concerning representation by counsel were deficient and we find that

5

her waiver of her right to counsel was valid.

## II. Residual Functional Capacity Finding

Alexander argues that the ALJ made his residual function capacity ("RFC") finding without explaining the evidence in the record that he relied upon in forming such a conclusion. The Seventh Circuit has warned administrative law judges that "[t]he Commissioner's determination must be based on testimony and medical evidence in the record" and that "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). The ALJ found that Alexander "retains the residual functional capacity for a range of sedentary work." (AR 16). The ALJ also concluded that Alexander "is able to lift up to and carry ten pounds occasionally and file folders, ledgers and small tolls frequently; stand and walk occasionally, but require a fifteen minute break in the morning and the afternoon in addition to the usual breaks; and maintain concentration, persistence and pace for 95 percent of the work-day." (AR 16). The ALJ based his RFC finding on Alexander's testimony concerning her daily activities, the fact that "no physician has imposed any specific work related restrictions," and the "opinions of the state agency physicians who found the claimant limited to medium work." (AR 15). In addition, the ALJ stated

6

that the "medical evidence supports the physical and mental limitations indicated in the RFC above. . . ." (AR 15). However, the ALJ fails to elaborate or explain how the medical evidence supports his RFC finding. The only specific reference to the medical evidence is, as stated above, the absence of work-related restrictions by physicians. The ALJ thus erred in failing to provide a sufficient explanation to allow Alexander to understand his reasoning.

The ALJ also failed to adequately address Alexander's obesity and its impact on her other impairments in the RFC analysis. An ALJ is required to consider all of "the applicant's medical situation as a whole," *Barrett v. Barnhart*, 355 F.3d 1065, 1068-69 (7th Cir. 2004), and thus must "consider the *aggregate* effect of this entire constellation of ailments-including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). If a claimant suffers from obesity, the ALJ is required to determine how her other impairments "would interact with her obesity. . . ." *Id.* In the instant action, the ALJ failed to address the impact of Alexander's obesity, which was raised, for example, in Dr. Patil's findings. Also aside from Alexander's obesity, the ALJ erred by failing to consider the commutative effect of all of Alexander's impairments.

III. Duty to Develop Record

7

Alexander argues that the ALJ failed to adequately develop the record. An ALJ is obligated in general "to develop a full and fair record." *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997). If a claimant before the ALJ is not represented by counsel the ALJ has a heightened "duty to 'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* The heightened duty to develop the record for *pro se* applicants remains "regardless of whether the plaintiff's waiver of counsel was valid." *Id.* (stating that "a significant omission is usually required before this court will find that the Secretary failed to assist pro se claimants in developing the record fully and fairly"). In the instant action, the ALJ merely noted that no physician had given Alexander any work related restrictions, but Alexander contends that no physician was asked to make any judgments about such restrictions. The record does not reflect that the ALJ made an attempt to develop the record or re-contact any of the treating physicians as to Alexander's work related restrictions. Instead the ALJ simply made an inference against Alexander based upon the absence of evidence before him. If the ALJ had re-contacted the treating physicians, the ALJ could have also obtained other pertinent information, such as Alexander's manipulative limitations and how her various physical impairments affected her ability to concentrate, and the type of accommodations she would need in order to work. Also, although the ALJ states that he relied on the opinions of

8

state physicians, he notes that "they did not have the benefit of the current record, including the claimant's testimony." (AR 15). Thus, the ALJ erred by failing to adequately develop the record in this case.

## IV. Credibility Finding

Alexander argues that the ALJ erred in evaluating the credibility of Alexander's testimony. An ALJ's credibility determination is entitled to substantial deference, and "there has developed a firm and tenable rule of law 'that an ALJ's credibility determination will not be disturbed unless it is "patently wrong."'" *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)(quoting *Cannon v. Apfel*, 213 F.3d 970, 977 (7th Cir. 2000)). The ALJ concluded generally in his findings that "the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision." (AR 16). This generalized explanation does not explain the reasoning behind the ALJ's conclusion, and does not explain the implication that Alexander's testimony regarding her impairments was at least partially credible, nor does it detail the portions of her testimony that were credible. *See Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)(stating that an "ALJ must build an accurate and logical bridge from the evidence to his conclusion").

The body of the ALJ's decision does not shed any more light on his findings in this regard. The ALJ states, for example, "[i]n assessing the claimant's residual functional capacity, the undersigned has considered the claimant's complaints of pain, but do not find them credible to the extent that they are inconsistent with the residual functional capacity as described above." (AR 15). Thus, the reader is yet again left with the unanswered question as to what the ALJ concluded was not credible in Alexander's testimony as well as the bases for such a conclusion. Instead, the reader is referred to a broad portion of the decision to speculate as to the ALJ's reasoning on the credibility issue.

The ALJ further states in the body of his decision that "the degree of pain and limitation alleged by the claimant is not consistent with the objective medical evidence regarding these impairments. . . ." (AR15). However, the ALJ fails to elaborate and explain how Alexander's testimony was inconsistent with specific medical evidence. The ALJ also relied heavily upon Alexander's testimony regarding her daily activities, such as the fact that she does household chores. (AR 15). However, the Seventh Circuit has cautioned that an ALJ should not be overly influenced by the mere fact that a plaintiff admits to engaging in activities such as driving, shopping, or doing housework. *Carradine v. Barnhart*, 360 F.3d 751, 755-56 (7th Cir. 2004). The ALJ must consider such facts in the proper context, and

"consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week." *Id.* In the instant action, the ALJ erred in discounting the credibility of Alexander's testimony based upon her admitted daily activities because such activities did not necessarily indicate an ability to perform gainful employment.

## V. Hypothetical to Vocational Expert

Alexander argues that the ALJ erred in regard to the hypothetical questions posed to the vocational expert ("VE") at the administrative hearing. Generally, any hypothetical question posed by an ALJ to a vocational expert "must include all limitations supported by medical evidence in the record." *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004)(stating that "[t]he hypothetical need not include every physical limitation, provided that the vocational expert had the opportunity to learn of the applicant's limitations through, for example, an independent review of the medical records or through other questioning at the hearing. . .[but,] [n]evertheless, where the hypothetical does not include all of the applicant's limitations, [the court] must have some amount of evidence in the record indicating that the vocational expert knew the extent of the applicant's limitations").

In the instant action, Alexander contends that the hypothetical questions asked

to the VE were incomplete. Alexander correctly points out that the ALJ's hypotheticals were formulated on the ALJ's own amateur medical diagnoses, and the ALJ failed to make findings concerning the functional demands of the jobs in question. *See, e.g.,* SSR 82-62. The ALJ found that Alexander was capable of performing her past work as an office clerk and receptionist. (AR 17). However, in making such a finding the ALJ ignored the record which reflects that Alexander eventually worked only part time as an office assistant, worked as a clerical assistant only three days a week, and worked as a receptionist only two days a week. (AR 202-06). Thus, the ALJ's conclusion that Alexander had engaged in gainful employment as an office clerk and receptionist fails to consider the fact that the positions were not full-time positions. Also, the record reflects that Alexander was fired from her clerical assistant job because Alexander was not skilled at working with a computer. (AR 206). The ALJ concluded that Alexander could perform the job of an office assistant or receptionist, but failed to take into consideration the likelihood that computer skills would be necessary to perform such jobs as well as Alexander's past history. In addition, an ALJ is required to ask a VE whether or not the job described by the VE differs from the Directional of Occupational Titles and where differences are identified, the VE must offer further explanation. SSR 00-4p. The ALJ failed to properly question the VE in this regard as well. Although the VE

indicated that certain sedentary, unskilled positions existed for a hypothetical individual, the VE never named any actual titles of jobs. (AR 247).

## CONCLUSION

Based on the foregoing analysis, we deny Alexander's motion for summary judgment, deny Defendant's motion for summary judgment, and grant Alexander's motion to remand.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: September 21, 2005